**KOPELOWITZ OSTROW P.A.**
Kristen Lake Cardoso (SBN 338762)
cardoso@kolawyers.com
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEPHANIE SARFO**, *individually and on behalf of all others similarly situated*,<br><br>      Plaintiff,<br><br>v.<br><br>**PANDA RESTAURANT GROUP, INC**.,<br><br>      Defendant. | **Case No.**<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Stephanie Sarfo ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against Panda Restaurant Group, Inc. ("Defendant") based on personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by her counsel and review of public documents, as to all other matters:

**I.    INTRODUCTION**

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Plaintiff's and other similarly situated Defendant employees' sensitive information, including full names, dates of birth, Social Security numbers and financial account numbers ("Private Information").

2.      Defendant, the "parent company of Panda Inn, Panda Express and Hibachi-San,"[1]

---

[1] https://www.pandarg.com/about-us.html.

which are each chains of Asian restaurants. In particular, Panda Express, a fast casual restaurant that serves American Chinese cuisine, has over 2,300 stores, 47,000 employees, and $3 billion in sales, and is the "largest family owned and operated Asian dining concept" in the United States.[2]

3.    Former and current Defendant employees are required to entrust Defendant with Private Information in order to obtain employment from Defendant. Defendant retains this information for at least many years and even after the employment relationship has ended.

4.    By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

5.    By letter dated April 29, 2024 (the Notice Letter, attached hereto as **Exhibit A**), sent to Plaintiff and Class Members, Defendant claims it was alerted to activity indicating that an unknown third party had obtained unauthorized access to Defendant's data between March 7-11, 2024. (the "Data Breach").

6.    Defendant failed to adequately protect Plaintiff's and Class Members' Private Information. This Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and their utter failure to protect employees' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in making fraudulent purchases and exploiting or stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

7.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents.

---

[2]    https://www.pandarg.com/our-brands.html#:~:text=With%20more%20than%202%2C300%20stores,Asian%20dining%20concept%20in%20America.

1    Defendant's conduct amounts at least to negligence and violates federal and state statutes.

2        8.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally,

3    willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable

4    measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded,

5    failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow

6    applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of

7    data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was

8    compromised through disclosure to an unknown and unauthorized third party.

9        9.    Plaintiff and Class Members have a continuing interest in ensuring that their Private

10    Information is and remains safe, and they should be entitled to injunctive and other equitable relief.

11        10.    Plaintiff and Class Members have suffered injury as a result of Defendant's conduct.

12    In addition to fraud, these injuries include: (i) invasion of privacy; (ii) lost or diminished value of

13    Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the

14    actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) and increase in spam

15    calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private

16    Information, which: (a) remains unencrypted and available for unauthorized third parties to access

17    and abuse; and (b) remains backed up in Defendant's possession and is subject to further

18    unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures

19    to protect the Private Information.

20        11.    Plaintiff and Class Members seek to remedy these harms and prevent any future data

21    compromise on behalf of herself and all similarly situated persons whose personal data was

22    compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's

23    inadequate data security practices.

24    **II.    PARTIES**

25        12.    Plaintiff Stephanie Sarfo, is, and at all times mentioned herein was, an individual

26    citizen and resident of West Virginia. Plaintiff received a Notice of Data Breach letter (attached

27    hereto as **Ex. A**), via U.S. Mail.

28

13.     Defendant is a corporation organized under the state laws of California with its principal place of business located in Rosemead, California.

## III.    JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, many of whom reside outside the state of California and have different citizenship from Defendant, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A)

15.     This Court has jurisdiction over Defendant because Defendant operates in this District.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant has harmed Class Members residing in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    *Defendant's Business*

17.     Defendant operates a "parent company of Panda Inn, Panda Express ad Hibachi-San[.]"[3]

18.     Plaintiff and Class Members are current and former Defendant employees.

19.     To apply to be an employee or obtain certain employment related benefits at Defendant, Defendant requires that its employees, including Plaintiff and Class Members, entrust it with highly sensitive personal information, including:

- full name;
- date of birth;
- financial account numbers; and

---

[3] https://www.pandarg.com/about-us.html.

- Social Security numbers.

20.     The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted data of Plaintiff and Class Members.

21.     Upon information and belief, Defendant made promises and representations to its employees, including Plaintiff and Class Members, that the data collected from them in order to apply to be an employee or obtain certain employment related benefits would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

22.     Defendant provides on its website that: "[p]rotecting your personal information is important to us. We maintain administrative, technical, and physical safeguards designed to help protect against unauthorized use, disclosure, alteration, or destruction of the personal information we collect on our websites."[4]

23.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

24.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

25.     Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep employees' Private Information safe and confidential.

26.     Defendant derived a substantial economic benefit from collecting Plaintiff's and

---

[4] https://www.pandarg.com/privacy-policy.html.

Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

27.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

**B.    *The Data Breach***

28.    Based on the Notice Letter filed by Defendant and sent to Plaintiff and Class Members, it was alerted to activity indicating unauthorized access by a third party on or about April 29, 2024.

29.    On March 10, 2024, Defendant then learned that an unknown third party had obtained unauthorized access to Defendant's data between March 7-11, 2024.

30.    The Notice Letter informed victims of the Data Breach:

**WHAT HAPPENED?**

On March 10, 2024, Panda detected a data security incident that impacted certain corporate systems. The incident did not impact our in-store systems, operations or guest experience. Upon detecting this incident, we took immediate action to secure our environment, activated our remediation and recovery efforts, and launched a thorough investigation in partnership with third-party cybersecurity specialists to determine the nature and scope of the incident. We also worked with law enforcement.

After a thorough investigation, we determined that certain information maintained on our corporate systems was accessed by the unauthorized actor between March 7-11, 2024. With the support of third-party experts, we then began a thorough review of the data affected to identify the specific information and individuals impacted. On April 15, we concluded our review of impacted data and determined that your personal information was involved.

**WHAT INFORMATION WAS INVOLVED?**

The types of information involved include your first and last name, in combination with your SSN, Date Of Birth, Financial Account Number.[5]

31.    The Notice Letter attached information about identity protection, and listed generic

---

[5] *See* Ex. A, the Notice Letter.

1   steps that victims of data security incidents can take, such as examining account statements, getting a

2   copy of a free annual credit report, or implementing a fraud alert or security freeze.

3       32.     Omitted from the Notice Letter were the details of the root cause of the Data Breach,

4   the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not

5   occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class

6   Members, who retain a vested interest in ensuring that their Private Information remains protected.

7       33.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any

8   degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these

9   details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach

10  is severely diminished.

11      34.     Defendant did not use reasonable security procedures and practices appropriate to

12  the nature of the sensitive information they were maintaining for Plaintiff and Class Members,

13  causing the exposure of Private Information, such as encrypting the information or deleting it when

14  it is no longer needed. Moreover, Defendant failed to exercise due diligence in safeguarding

15  information.

16      35.     The attacker targeted, accessed, and acquired files in Defendant's computer systems

17  containing unencrypted PII of Plaintiff and Class Members, including their names and Social

18  Security numbers. Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

19      36.     Plaintiff further believes her Private Information, and that of Class Members, was

20  subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of

21  cybercriminals that commit cyber-attacks of this type.

22      **C.    *Defendant Acquires, Collects, and Stores Plaintiff's and the Class's Private***

23          ***Information.***

24      37.     As a condition to obtain employment from Defendant, Plaintiff and Class Members

25  were required to give their Private Information to Defendant.

26      38.     Defendant retains and stores this information and derives a substantial economic

27  benefit from the Private Information that they collect. But for the collection of Plaintiff's and Class

28

1    Members' Private Information, Defendant would be unable to perform its services.

2       39.     By obtaining, collecting, and storing the Private Information of Plaintiff and Class

3    Members, Defendant assumed legal and equitable duties and knew or should have known that they

4    were responsible for protecting the Private Information from disclosure.

5       40.     Plaintiff and Class Members have taken reasonable steps to maintain the

6    confidentiality of their Private Information and relied on Defendant to keep their Private Information

7    confidential and maintained securely, to use this information for business purposes only, and to

8    make only authorized disclosures of this information.

9       41.     Defendant could have prevented this Data Breach by properly securing and

10    encrypting the files and file servers containing the Private Information of Plaintiff and Class

11    Members.

12       42.     Upon information and belief, Defendant made promises to Plaintiff and Class

13    Members to maintain and protect their Private Information, demonstrating an understanding of the

14    importance of securing it.

15       43.     Defendant's negligence in safeguarding the Private Information of Plaintiff and

16    Class Members is exacerbated by the repeated warnings and alerts directed to protecting and

17    securing sensitive data, as evidenced by trending data breach attacks.

18       **D.**     ***Defendant Knew or Should Have Known of the Risk of Cyber Attacks.***

19       44.     Defendant's data security obligations were particularly important given the

20    substantial increase in cyber-attacks and/or data breaches targeting businesses that collect and store

21    Private Information, like Defendant, preceding the date of the breach.

22       45.     Data thieves regularly target companies like Defendant's due to the highly sensitive

23    information that they control. Defendant knew and understood that unprotected Private Information

24    is valuable and highly sought after by criminal parties who seek to illegally monetize that Private

25    Information through unauthorized access.

26       46.     In 2021, a record 1,862 data breaches occurred, resulting in approximately

27

28

1    293,927,708 sensitive records being exposed, a 68% increase from 2020.[6]

2    47.    In light of recent high profile data breaches at other industry leading companies,

3    including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June

4    2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020),

5    Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May

6    2020), Defendant knew or should have known that the Private Information that they collected and

7    maintained would be targeted by cybercriminals.

8    48.    As a custodian of Private Information, Defendant knew, or should have known, the

9    importance of safeguarding the Private Information entrusted to it by Plaintiff and Class members,

10   and of the foreseeable consequences if its data security systems were breached, including the

11   significant costs imposed on Plaintiff and Class Members as a result of a breach.

12   49.    Despite the prevalence of public announcements of data breach and data security

13   compromises, Defendant failed to take appropriate steps to protect the Private Information of

14   Plaintiff and Class Members from being compromised.

15   50.    At all relevant times, Defendant knew, or reasonably should have known, of the

16   importance of safeguarding the Private Information of Plaintiff and Class Members and of the

17   foreseeable consequences that would occur if Defendant's data security system was breached,

18   including, specifically, the significant costs that would be imposed on Plaintiff and Class Members

19   as a result of a breach.

20   51.    Additionally, as companies became more dependent on computer systems to run

21   their business,[7] e.g., working remotely as a result of the Covid-19 pandemic, and the Internet of

22   Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for

23   adequate administrative, physical, and technical safeguards.[8]

24   52.    Defendant was, or should have been, fully aware of the unique type and the

25   

26   [6] See 2021 Data Breach Annual Report (ITRC, Jan. 2022) (https://notified.idtheftcenter.org/s/), at 6.
     [7] https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-
     stability-20220512.html.

27   [8] https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-
     firms-in-2022.

28   

CLASS ACTION COMPLAINT
9

significant volume of data on Defendant's server(s), amounting to potentially thousands of individuals' detailed, Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

53.    In the Notice Letter, Defendant offers to cover identity monitoring services for Plaintiff and Class Members. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff and Class Members' Private Information. Moreover, once this service expires, Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services.

54.    Defendant's offer of credit and identity monitoring establishes that Plaintiff's and Class Members' sensitive Private Information *was* in fact affected, accessed, compromised, and exfiltrated from Defendant's computer systems.

55.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

56.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Private Information is stolen— particularly Social Security numbers— fraudulent use of that information and damage to victims may continue for years.

**E.    *Value of the Private Information***

57.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[10]

---

[9] 17 C.F.R. § 248.201 (2013).
[10] *Id.*

58.     The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[11]

59.     For example, Private Information can be sold at a price ranging from $40 to $200.[12] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

60.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

61.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

**F.    *Defendant Failed to Comply with FTC Guidelines.***

62.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for sensitive personal information is an "unfair practice" in violation of

---

[11] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.
[12] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.
[13] *In the Dark*, VPNOVERVIEW, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.
[14] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

63.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal employee information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

64.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

65.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

66.     These FTC enforcement actions include actions against employers, like Defendant.

67.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

68.     Defendant was at all times fully aware of its obligation to protect the Private

Information of its employees yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

G.    ***Defendant Failed to Comply with Industry Standards.***

69.    Experts studying cyber security routinely identify ecommerce platforms as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

70.    Several best practices have been identified that a minimum should be implemented by employers in possession of Private Information, like Defendant, including but not limited to educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data.

71.    A number of industry and national best practices have been published and should be used as a go-to resource when developing a business' cybersecurity standards. The Center for Internet Security ("CIS") released its Critical Security Controls. The CIS Benchmarks are the only consensus-based, best-practice security configuration guides both developed and accepted by government, business, industry, and academia.

72.    Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

73.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

74.     These foregoing frameworks are existing and applicable industry standards for employers safeguarding their employees' data, and upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**H.**     ***Defendant Breached Its Duty to Safeguard Plaintiff's and Class Members' Private Information.***

75.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

76.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.     Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b.     Failing to adequately protect employees' Private Information;

c.     Failing to properly monitor its own data security systems for existing intrusions;

d.     Failing to sufficiently train its employees regarding the proper handling of its employees Private Information;

e.     Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA; and

f.     Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

77.     Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

78.     Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

**I.    *Common Injuries & Damages***

79.     As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

**J.    *The Data Breach Increases Victims' Risk of Identity Theft.***

80.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come.

81.     The unencrypted Private Information of Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for

targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

82.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

83.     One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[15]

84.     With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

**K.     *Loss of Time to Mitigate Risk of Identity Theft and Fraud***

85.     As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

86.     Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must, as Defendant's Notice Letter instructs, "remain vigilant against incidents of identity theft and fraud by regularly reviewing your credit reports and account statements for suspicious

---

[15] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/ medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

activity and to detect errors."[16]

87.    In addition, Defendant's Notice letter includes a full three pages devoted to "Steps You Can Take to Protect Against Identity Theft and Fraud" that recommend Plaintiff and Class Members to partake in activities such as obtaining credit reports, placing fraud alerts and security freezes on their accounts, and contacting consumer reporting bureaus.[17]

88.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and resecuring their own computer networks; and checking their financial accounts for any indication of fraudulent activity, which may take years to detect.

89.    These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[18]

90.    These efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[19]

91.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[20]

---

[16] Notice Letter

[17] *Id.*

[18] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[19] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps.

[20] Jason Steele, "Credit Card and ID Theft Statistics," Oct. 24, 2017, https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php.

CLASS ACTION COMPLAINT

17



92.     And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[21]

**L.    *Diminution Value of Private Information***

93.     Private Information is a valuable property right.[22] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

94.     An active and robust legitimate marketplace for Private Information exists. In 2019, the data brokering industry was worth roughly $200 billion.[23]

95.     In fact, the data marketplace is so sophisticated that people can actually sell their

---

[21] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. GOV'T ACCOUNTABILITY OFFICE, June 2007, https://www.gao.gov/ new.items/d07737.pdf ("GAO Report").

[22] *See, e.g.*, Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009).

[23] https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

1  non-public information directly to a data broker who in turn aggregates the information and provides
2  it to marketers or app developers.[24,25]

3      96.     Individuals who agree to provide their web browsing history to the Nielsen
4  Corporation can receive up to $50.00 a year.[26]

5      97.     Conversely sensitive Private Information can sell for as much as $363 per record on
6  the dark web according to the Infosec Institute.[27]

7      98.     As a result of the Data Breach, Plaintiff's and Class Members' Private Information,
8  which has an inherent market value in both legitimate and dark markets, has been damaged and
9  diminished by its compromise and unauthorized release. However, this transfer of value occurred
10 without any consideration paid to Plaintiff or Class Members for their property, resulting in an
11 economic loss.

12     99.     At all relevant times, Defendant knew, or reasonably should have known, of the
13 importance of safeguarding the Private Information of Plaintiff and Class Members, and of the
14 foreseeable consequences that would occur if Defendant's data security system was breached,
15 including, specifically, the significant costs that would be imposed on Plaintiff and Class Members
16 as a result of a breach.

17     100.    Defendant was, or should have been, fully aware of the unique type and the
18 significant volume of data on Defendant's network, amounting to thousands of individuals' detailed
19 personal information, upon information and belief, and thus, the significant number of individuals
20 who would be harmed by the exposure of the unencrypted data.

21     101.    The injuries to Plaintiff and Class Members were directly and proximately caused by
22 Defendant's failure to implement or maintain adequate data security measures for the Private
23 Information of Plaintiff and Class Members.

24

25 ────────────────
[24] https://datacoup.com/.
[25] https://digi.me/what-is-digime/.
26 [26] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, https://computermobilepanel.
nielsen.com/ui/US/en/faqen.html.
27 [27] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015),
https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.
28

**M.**    *Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary.*

102.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information involved, and the volume of data obtained in the Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes.

103.    Such fraud may go undetected until debt collection calls commence months, or even years, later.

104.    Consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

105.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

**N.**    *Loss of the Benefit of the Bargain*

106.    Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to employment with Defendant under certain terms, Plaintiff and Class Members reasonably understood and expected that Defendant maintained necessary data security to protect their Private Information, when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received employment positions that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

**O.**    *Plaintiff's Experience*

107.    Plaintiff Stephanie Sarfo is a former employee of Defendant.

108.    As a condition of employment, Plaintiff was required to provide her Private Information to Defendant, including her name, contact information, Social Security number and

CLASS ACTION COMPLAINT
20

1    financial information.

2        109.    At the time of the Data Breach, Defendant retained Plaintiff's Private Information in

3    its system.

4        110.    Plaintiff is very careful about sharing and protecting her Private Information.

5    Plaintiff stores any documents containing her Private Information in a safe and secure location. She

6    has never knowingly transmitted unencrypted sensitive Private Information over the internet or any

7    other unsecured source. Plaintiff would not have entrusted her Private Information to Defendant had

8    she known of Defendant's lax data security policies.

9        111.    Plaintiff received the Notice Letter, by U.S. mail, from Defendant. According to the

10    Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized

11    third parties.

12        112.    As a result of the Data Breach, and at the direction of Defendant's Notice Letter,

13    Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including signing up for

14    the Experian credit monitoring product offered by Defendant and setting up fraud alerts and placing

15    a freeze on her credit, contacting her bank and changing passwords on her accounts, and checking

16    her accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff has

17    spent significant time dealing with the Data Breach—valuable time Plaintiff otherwise would have

18    spent on other activities, including but not limited to work and/or recreation. This time has been lost

19    forever and cannot be recaptured.

20        113.    Plaintiff suffered actual injury from having her Private Information compromised as

21    a result of the Data Breach including, but not limited to: (i) lost or diminished value of her Private

22    Information; (ii) lost opportunity costs associated with attempting to mitigate the actual

23    consequences of the Data Breach, including but not limited to lost time; (iii) invasion of privacy; (iv)

24    loss of benefit of the bargain; and (v) the continued and certainly increased risk to her Private

25    Information, which: (a) remains unencrypted and available for unauthorized third parties to access

26    and abuse; and (b) remains backed up in Defendant's possession and is subject to further

27    unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures

28

CLASS ACTION COMPLAINT
21

1  to protect the Private Information.

2  114.    She has never been notified that her information was exposed in a data breach

3  before.

4  115.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has

5  been compounded by the fact that Defendant has still not fully informed her of key details about the

6  Data Breach's occurrence. Plaintiff would not have applied for or accepted employment with

7  Defendant had she known of Defendant's lax data security.

8  116.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and

9  money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

10  117.    As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at

11  increased risk of identity theft and fraud for years to come.

12  118.    Plaintiff has a continuing interest in ensuring that her Private Information, which,

13  upon information and belief, remains backed up in Defendant's possession, is protected and

14  safeguarded from future breaches.

15  **V.  CLASS ACTION ALLEGATIONS**

16  119.    Plaintiff brings this action individually and on behalf of all other persons similarly

17  situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

18  120.    Specifically, Plaintiff proposes the following Class definition, subject to amendment

19  as appropriate:

20
      All individuals in the United States whose Private Information was disclosed
21      in the Data Breach (the "Class").

22  121.    Excluded from the Class are Defendant and its parents or subsidiaries, any entities in

23  which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives,

24  heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is

       assigned as well as their judicial staff and immediate family members.
25

26  122.    Plaintiff reserves the right to modify or amend the definition of the proposed Class

27  before the Court determines whether certification is appropriate.

       123.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a),
28

1 | (b)(2), and (b)(3).

2 |     124.   <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is

3 | impracticable. Upon information and belief, Plaintiff believes that the proposed Class includes

4 | thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The

5 | precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's

6 | records.

7 |     125.   <u>Commonality</u>. There are questions of law and fact common to the Class which

8 | predominate over any questions affecting only individual Class Members. These common questions

9 | of law and fact include, without limitation:

10 |     a.   Whether Defendant engaged in the conduct alleged herein;

11 |     b.   When Defendant learned of the Data Breach;

12 |     c.   Whether Defendant's response to the Data Breach was adequate;

13 |     d.   Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class

14 |         Members' Private Information;

15 |     e.   Whether Defendant failed to implement and maintain reasonable security procedures

16 |         and practices appropriate to the nature and scope of the Private Information

17 |         compromised in the Data Breach;

18 |     f.   Whether Defendant's data security systems prior to and during the Data Breach

19 |         complied with applicable data security laws and regulations;

20 |     g.   Whether Defendant's data security systems prior to and during the Data Breach were

21 |         consistent with industry standards;

22 |     h.   Whether Defendant owed a duty to Class Members to safeguard their Private

23 |         Information;

24 |     i.   Whether Defendant breached its duty to Class Members to safeguard their Private

25 |         Information;

26 |     j.   Whether hackers obtained Class Members' Private Information via the Data Breach;

27 |     k.   Whether Defendant had a legal duty to provide timely and accurate notice of the

28 |

Data Breach to Plaintiff and the Class Members;

l.     Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

n.     What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

o.     Whether Defendant's conduct was negligent;

p.     Whether Defendant was unjustly enriched;

q.     Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

r.     Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

s.     Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

126.   _Typicality_. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, inter alia, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

127.   _Adequacy of Representation._ Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

128.   _Predominance_. Defendant has engaged in a common course of conduct toward

Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

129.    Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

130.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

131.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent Notice of the Data Breach by Defendant.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Negligence and Negligence Per Se**

**(On Behalf of Plaintiff and the Class)**

132.    Plaintiff restates and realleges paragraphs 1 through 131 above as if fully set forth

herein.

133.    Defendant requires its employees, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing services.

134.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business, which solicitations and services affect commerce.

135.    Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

136.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

137.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to exercise due diligence in safeguarding data and to give prompt notice to those affected in the case of a data breach.

138.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

139.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

140.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining employment at Defendant.

141.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

142.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

143.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' Private Information it was no longer required to retain pursuant to regulations.

144.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

145.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

146.    Defendant breached its duties, pursuant to the FTC Act, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.   Failing to adequately monitor the security of their networks and systems;

c.   Allowing unauthorized access to Class Members' Private Information;

d.   Failing to detect in a timely manner that Class Members' Private Information had been compromised;

e.   Failing to remove former employees' Private Information it was no longer required to retain pursuant to regulations; and

f.  Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

147.  Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

148.  Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

149.  Defendant's violation of Section 5 of the FTC Act constitutes negligence per se.

150.  The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

151.  A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

152.  It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the financial industry.

153.  Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

154.  Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of

providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

155.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

156.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

157.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

158.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

159.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

160.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

161.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

162.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with

attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) and increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

163.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

164.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

165.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

166.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner.

167.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

### **COUNT II**

**Breach Of Implied Contract**

**(On Behalf of Plaintiff and the Class)**

168.    Plaintiff restates and realleges paragraphs 1 through 131 above as if fully set forth

herein.

169.    Plaintiff and Class Members were required to provide their Private Information to Defendant as part of the process of obtaining employment at Defendant.

170.    Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

171.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

172.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

173.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

174.    Defendant solicited, offered, and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

175.    In accepting the Private Information of Plaintiff and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the Private Information from unauthorized access or disclosure.

176.     On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

177.     On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

178.     Plaintiff and Class Members provided their labor to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

179.     Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

180.     Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

181.     Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

182.     Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

183.     As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

184.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

185.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT III

### Unjust Enrichment

### (On Behalf of Plaintiff and the Class)

186.    Plaintiff restates and realleges paragraphs 1 through 131 above as if fully set forth herein.

187.    This count is pleaded in the alternative to the Breach of Implied Contract claim above (Count II).

188.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided their labor to Defendant and/or its agents and in so doing also provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the employment positions that were the subject of the transaction and should have had their Private Information protected with adequate data security.

189.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

190.    Defendant enriched itself by saving the costs it reasonably should have expended in data-security measures to secure Representative Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Representative Plaintiff and Class Members by utilizing cheaper, ineffective security measures. On the other hand, Representative Plaintiff and Class Members suffered as a direct and proximate result of Defendant's decision to prioritize its profits over the requisite security.

191.    Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

192.    Defendant acquired Private Information through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

193.    If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would have entrusted their Private Information to Defendant or obtained employment from Defendant.

194.    Plaintiff and Class Members have no adequate remedy at law.

195.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

196.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) and increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

197.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

198.    Plaintiff and Class Members may not have an adequate remedy at law against

1    Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the

2    alternative to, other claims pleaded herein.

3    **COUNT IV**

4    **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**

5    **Cal. Bus. & Prof. Code §17200 *et seq*.**

6    **(On Behalf of Plaintiff and the Class)**

7    199.    Plaintiff restates and realleges paragraphs 1 through 131 above as if fully set forth

8    herein.

9    200.    Defendant is a "person" defined by Cal. Bus. & Prof. Code § 17201.

10    201.    Defendant violated Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") by engaging in

11    unlawful, unfair, and deceptive business acts and practices.

12    202.    Defendant's "unfair" acts and practices include:

13        a.    by utilizing cheaper, ineffective security measures and diverting those funds to its

14            own profit, instead of providing a reasonable level of security that would have

15            prevented the hacking incident;

16        b.    failing to follow industry standard and the applicable, required, and appropriate

17            protocols, policies, and procedures regarding the encryption of data;

18        c.    failing to timely and adequately notify Class Members about the Data Breach's

19            occurrence and scope, so that they could take appropriate steps to mitigate the

20            potential for identity theft and other damages;

21        d.    Omitting, suppressing, and concealing the material fact that it did not reasonably or

22            adequately secure Plaintiff's and Class Members' personal information; and

23        e.    Omitting, suppressing, and concealing the material fact that it did not comply with

24            common law and statutory duties pertaining to the security and privacy of

25            Plaintiff's and Class Members' personal information, including duties imposed by

26            the FTC Act, 15 U.S.C. § 45.

27    203.    Defendant has engaged in "unlawful" business practices by violating multiple laws,

28

including the FTC Act, 15 U.S.C. § 45, and California common law.

204. As alleged herein this Complaint, Defendant engaged in unfair or deceptive acts or practices, including, among other things, the following:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' personal information, which was a direct and proximate cause of the Data Breach;

    b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

    d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' personal information, including by implementing and maintaining reasonable security measures; and

    e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

205. Defendant's representations and omissions were material because they were likely to deceive reasonable people about the adequacy of Defendant's data security and ability to protect the confidentiality of personal information.

206. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members' were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring their accounts for fraudulent activity, fraud and identity theft, an increased, imminent risk of fraud and identity theft, and loss of value of their

1    personal information.

2       207.    Defendant's violations were, and are, willful, deceptive, unfair, and

3    unconscionable.

4       208.    Plaintiff and Class Members have lost property as a result of Defendant's conduct

5    in violation of the UCL, as stated herein and above.

6       209.    By deceptively storing, collecting, and disclosing their personal information,

7    Defendant has taken money or property from Plaintiff and Class Members.

8       210.    Defendant acted intentionally, knowingly, and maliciously to violate California's

9    Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

10      211.    Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by

11   law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent

12   business practices or use of their personal information; declaratory relief; reasonable attorneys' fees

13   and costs under California. Code of Civil Procedure § 1021.5; injunctive relief; and other

14   appropriate equitable relief, including public injunctive relief.

15                                   **<u>COUNT V</u>**

16                          **DECLARATORY JUDGMENT**

17                      **(On Behalf of Plaintiff and the Class)**

18      212.    Plaintiff restates and realleges paragraphs 1 through 131 above as if fully set forth

19   herein.

20      213.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is

21   authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

22   necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are

23   tortious and violate the terms of the federal and state statutes described in this Complaint.

24      214.    Defendant owes a duty of care to Plaintiff and Class Members which required it to

25   adequately secure Private Information.

26      215.    Defendant still possesses Private Information regarding Plaintiff and Class

27   Members.

28

216.    Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of Private Information, and remains at imminent risk that further compromises of the Private Information will occur in the future.

217.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.  Defendant owes a legal duty to secure employees' Private Information and to timely notify employees of a data breach under the common law and Section 5 of the FTCA;

    b.  Defendant's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect employees' Private Information; and

    c.  Defendant continues to breach this legal duty by failing to employ reasonable measures to secure employees' Private Information.

218.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect employees' Private Information, including the following:

    a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members, and

    b. Order Defendant to comply with its explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures.

219.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

220.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by finally employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

221.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and employees whose Private Information would be further compromised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.  For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class, pursuant to Federal Rule of Civil Procedure 23;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.  For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.   prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.  requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendant to delete, destroy, and purge the personal identifying

information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v.  prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi.  requiring Defendant to engage independent third-party security auditors/penetration testers and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.  requiring Defendant to conduct regular database scanning and securing checks;

x.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

 xi. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

 xii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

 xiii. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

 xiv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

 xv. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

 xvi. for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of actual damages, compensatory damages, statutory damages, and

CLASS ACTION COMPLAINT
41

1    nominal damages, in an amount to be determined, as allowable by law;

2    E.  For an award of punitive damages, as allowable by law;

3    F.  For an award of attorneys' fees and costs, and any other expenses, including expert

4        witness fees;

5    G.  Pre- and post-judgment interest on any amounts awarded; and

6    H.  Such other and further relief as this court may deem just and proper.

7    **<u>DEMAND FOR JURY TRIAL</u>**

8    Plaintiff demands a trial by jury on all issues so triable.

9    Dated:  May 11, 2024.                    Respectfully submitted,

10                                            */s/ Kristen Lake Cardoso*
                                             Kristen Lake Cardoso (SBN 338762)
11                                           Kenneth Grunfeld*
                                             **KOPELOWITZ OSTROW P.A.**
12                                           One West Las Olas Blvd., Suite 500
                                             Fort Lauderdale, Florida 33301
13                                           Telephone: 954-525-4100
                                             cardoso@kolawyers.com
14                                           grunfeld@kolawyers.com

15                                           *Counsel for Plaintiff and the Proposed Class*

16                                           **Pro Hac Vice* application forthcoming

17

18

19

20

21

22

23

24

25

26

27

28